**LAW OFFICES OF RILEY & RILEY, LLC**
Tracy L. Riley, Esquire
Attorney ID: 006862008
Executive Court
2 Eves Drive, Suite 109
Marlton, New Jersey 08053
(609) 914-0300
triley@rileyandrileylaw.com
Attorneys for Defendant, City of Atlantic City

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| STEVEN L. YOUNG, SR., | : | |
| LEVAR DAVIS, | : | |
| MICHAEL SCOTT, JR. | : | Chief Judge, Renee Marie Bumb |
| TROY OGLESBY, | : | Magistrate Judge, Elizabeth A. Pascal |
| ALEXANDER KETTLES, | : | Civil Action No.: 1:26-cv-01313-RMB-EAP |
| NOLAN MALIK MITCHELL, | : | |
| TAIWA UKAWABUTU, | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| vs. | : | |
|  | : | |
| MARTY SMALL, | : | **DEFENDANT, CITY OF ATLANTIC** |
| Mayor of the City of Atlantic City, | : | **CITY'S BRIEF IN SUPPORT OF THE** |
| HENRY WHITE, Former Chief, | : | **MOTION TO DISMISS** |
| Atlantic City Police Department, | : | |
| OFFICERS A – Z, | : | |
| Atlantic City Police Department, and | : | |
| THE CITY OF ATLANTIC CITY, | : | |
|  | : | |
| Defendants. | : | |

LAW OFFICES OF RILEY & RILEY, LLC

By:

Tracy L. Riley, Esquire

Dated:  March 9, 2026

# **TABLE OF CONTENTS**

Table of Authorities ………………………………………………….    iii

LEGAL ARGUMENT

I.    THE 12(b)(6) MOTION TO DISMISS STANDARD …………...    1

II.   ALL OF THE PLAINTIFFS' CLAIMS PREDICATED
      UPON FALSE ARREST MUST BE DISMISSED BECAUSE
      PLAINTIFFS FAILED TO FILE WITHIN THE STATUTE OF
      LIMITATIONS AND THERE WAS CLEAR PROBABLE
      CAUSE TO ARREST …………………………………………    3

      A.    Because Plaintiffs' Complaint was Filed on
            February 20, 2026, Well Over Two Years After
            Their Arrests on July 4, 2020, Plaintiffs' Claims
            for False Arrest Were Filed Beyond the Statute
            of Limitations …………………………………………..    3

      B.    Plaintiffs Will Be Unable to Establish a Lack of
            Probable Cause Given the Undisputed Facts,
            Compelling Dismissal of Both the Claims for False
            Arrest and Malicious Prosecution …………………………    5

III.  PLAINTIFFS' CLAIMS FOR MALICIOUS PROSECUTION
      MUST BE DISMISSED, AS THE ALLEGATIONS OF THE
      COMPLAINT (AND THE OFFICIAL RECORDS INTEGRAL
      TO THE COMPLAINT) DO NOT SUPPORT ANY OF THE
      REQUIRED ELEMENTS ………………………………………..    11

A.  The Ultimate Disposition of the Municipal
    Charges Are Not in Plaintiffs' "Favor," as Required
    to Support Malicious Prosecution, Because They
    Were Not Consistent With Actual Innocence ……………    13

B.  Plaintiffs Have Failed to Even Allege that the
    Defendants Acted Maliciously, While the Existence
    of Probable Cause Set Forth Above Conclusively
    Establishes a Lack of Malice ………………………….    15

C.  Because Defendants Were Arrested Without a
    Warrant and Released, They May Not Assert a
    §1983 Malicious Prosecution Claim, As They
    Did Not Suffer Deprivation of Liberty Consistent
    With a Seizure ……………………………………….    17


IV.  BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH
     INDIVIDUAL LIABILITY, ALL OF HIS CAUSES OF
     ACTION THAT ASSERT A MONELL OR SUPERVISORY
     CLAIM MUST BE DISMISSED …………………………    20

V.   DEFENDANTS ARE ENTITLED TO DISMISSAL OF
     THE COMPLAINT PURSUANT TO THE QUALIFIED
     IMMUNITY DOCTRINE …………………………………    22


CONCLUSION …………………………………………………..    25

# TABLE OF AUTHORITIES

*Cases*

Adams v. Selhorst,
779 F. Supp. 2d 378, 386 (D. Del. 2011) ……………………………    6

Albright v. Oliver,
510 U.S. 266, 271(1994) …………………………………………….    12

Allen v. N.J. State Police,
974 F.3d 497, 502 (3d Cir. 2020) ……………………………………    12, 13, 14

Ashcroft v. al-Kidd,
563 U.S. 731, 741 (2011) ……………………………………………    23

Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) …………………………………………...    1 , 2 , 3 , 21

Beckett v. Department of Corrections,
981 F. Supp. 319, 329 (D. Del. 1997) …………………………………    24

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007) ……………………………………………    1, 2

City of Los Angeles v. Heller,
475 U.S. 796, 799 (1986) ……………………………………………    20

Curley v. Klem,
499 F.3d 199, 207 (3d Cir. 2007) ……………………………………    25

Devenpeck v. Alford,
543 U.S. 146, 153 (2004) ……………………………………………    6

DiBella v. Borough of Beachwood,
407 F.3d 599, 603 (3d Cir. 2005) ………………………………………… 18, 19

Dickens v. Dover City Police Dep't,
CIVA 03-310 JJF, 2007 WL 1970802, at *8 (D. Del. June 29, 2007) ….. 17

Dique v. N.J. State Police,
603 F.3d 181, 185 (3d Cir. 2010) ……………………………………….. 3, 4

Donahue v. Gavin,
280 F.3d 371, 383 (3d Cir. 2002) ……………………………………….. 14

Dowling v. Philadelphia,
855 F.2d 136, 141 (3d Cir. 1988) ……………………………………….... 6, 7

Estate of Soberal v. City of Jersey City,
334 F. App'x 492, 494 (3d Cir. 2009) …………………………………… 23

Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009) ……………………………………….. 1

Gallo v. City of Philadelphia,
161 F.3d 217, 222 (3d Cir. 1998), as amended (Dec. 7, 1998) …………. 18

Giles v. City of Phila.,
542 F. App'x 121, 123 (3d Cir. 2013) …………………………………… 4

Grubbs v. Univ. of Delaware Police Dep't,
174 F. Supp. 3d 839, 851 (D. Del. 2016) ……………………………….. 2

Halsey v. Pfeiffer,
750 F.3d 273, 297 (3d Cir. 2014) ……………………………………….. 16

Harlow v. Fitzgerald,
457 U.S. 800, 819 (1982) ……………………………………………….. 24

Hector v. Watt,
235 F.3d 154, 156 (3d Cir. 2000) ……………………………………..    14

Hedges v. Musco,
204 F.3d 109, 121 (3d Cir. 2000) ……………………………………..    21

Hooper v. Guthrie,
390 F. Supp. 1327, 1331 (W.D. Pa. 1975) ……………………………    5

Hunter v. Bryant,
502 U.S. 224, 229 (1991) ………………………………………………    23

In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1426 (3d Cir. 1997) …………………………………    2

Johnson v. City of Chester,
10 F.Supp.2d 482 (E.D. Pa. 1998) ……………………………………    18

Johnson v. Knorr,
477 F.3d 75, 81-82 (3d Cir. 2007) ……………………………………    12

Klesh v. Coddington,
295 N.J. Super. 51, 58 (Law. Div. 1996),
aff'd and remanded, 295 N.J. Super. 1 (App. Div. 1996) ………………    12

Kossler v. Crisanti,
564 F.3d 181, 187 (3d Cir. 2009) ……………………………………    13

Malley v. Briggs,
475 U.S. 335, 341 (1986) ………………………………………………    23

Mantz v. Chain,
239 F. Supp. 2d 486, 501 (D.N.J. 2002) …………………………………    18, 19

Minatee v. Philadelphia Police Dep't,
502 Fed. Appx. 225, 227 (3d Cir. 2012) …………………………………    7, 11

Mitchell v. Forsyth,
472 U.S. 511, 525 (1985) ………………………………………………    22

Monell v. New York City Dept. of Social Services,
436 U.S. 658 (1978) ................................................................ 20

Montgomery v. De Simone,
159 F.3d 120, 126 (3d Cir. 1998) ........................................ 4, 5

Morales v. Busbee,
972 F. Supp. 254, 261 (D.N.J. 1997) ............................... 15, 17

Ogrod v. City of Philadelphia,
598 F. Supp. 3d 253, 263 (E.D. Pa. 2022) ........................... 16

Orsatti v. New Jersey State Police,
71 F.3d 480, 483 (3d Cir. 1995) .................................. 6, 24, 25

Papasan v. Allain,
478 U.S. 265, 286 (1986) ....................................................... 1

Pearson v. Callahan,
555 U.S. 223, 231 (2009) ..................................................... 23

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,
998 F.2d 1192, 1196 (3d Cir. 1993) ....................................... 2

Pierson v. Ray,
386 U.S. 547, 554 (1967) ..................................................... 24

Rose v. Bartle,
871 F.2d 331, 350 (3d Cir. 1989) ........................................... 5

Russoli v. Salisbury Twp.,
126 F. Supp. 2d 821, 853 (E.D. Pa. 2000) ................. 17, 18, 19

Sameric Corp. of Del., Inc. v. City of Phila.,
142 F.3d 582, 599 (3d Cir. 1998) ...................................... 3, 4

Santiago v. Warminster Twp.,
629 F.3d 121, 130 (3d Cir. 2010) .................................. 21, 22

Shelley v. Wilson,
339 Fed. Appx. 136, 137 (3d Cir. 2009) ………………………………….. 3

Smith v. Gransden,
553 Fed. Appx. 173, 178 (3d. Cir. 2014) ………………………………… 20, 21

Startzell v. City of Philadelphia, Pennsylvania,
533 F.3d 183, 204 (3d Cir. 2008) ………………………………………… 7, 11

State v. Bessey,
A-0554-13T2, 2014 WL 9928205, at *5
(N.J. Super. Ct. App. Div. June 23, 2015) ……………………………….. 9

State v. Williams,
467 N.J. Super. 1, 5 (App. Div. 2021) …………………………………… 8

State v. Wishnatsky,
258 N.J. Super. 67, 82 (Law. Div. 1990) ………………………………… 8, 9

Tucker v. City of Phila.,
679 F. Supp. 3d 127, 137 (D.N.J. 2023) ………………………………….. 6

Wallace v. Kato,
549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) ………….. 4

Walter v. Pike Cty.,
544 F.3d 182, 190 (3d Cir. 2008) ………………………………………… 22, 23

Zedonis v. Lynch,
233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ……………………………….. 3


*Federal Rules of Civil Procedure*

Fed. Rule Civ. Proc. 8(a)(2) ……………………………………………… 2

Fed. Rule Civ. Proc. 12(b)(6) …………………………………………… 1, 2, 3, 22

*New Jersey Statutes*

2C:33-7 ……………………………………………………..    7, 9, 11, 14, 16

2C:33-7(b) ……………………………………………………    9, 11, 12, 14

## LEGAL ARGUMENT

### I.    THE 12(b)(6) MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) warrants dismissal when the plaintiff has failed to state a claim upon which relief can be granted. The Court's role when evaluating a motion to dismiss has been oft stated – it must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). That analysis however, does not apply to legal conclusions, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In short, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Id. at 686.

A plaintiff must thereby "provide the 'grounds' of his 'entitle[ment] to relief'" using "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). A simple "naked assertion" devoid of any "further factual enhancement … stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" Id. at 557. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to satisfy facial plausibility. If the complaint

merely suggests the possibility (rather than the plausibility) of misconduct, the complaint has "alleged--but it has not 'show[n]';--'that the pleader is entitled to relief.'" Ashcroft, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). The crux is to determine the "nub" of the plaintiff's complaint, by determining the well-pleaded facts, and then evaluating the sufficiency of the allegations when viewed in light of common experience. Id.at 680; Bell, 550 U.S. at 565-66.

When evaluating a 12(b)(6) motion, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)(document that is *integral to or explicitly relied* upon in the complaint may be considered on a motion to dismiss). Courts within the Third Circuit have ruled that when a plaintiff alleges false arrest and malicious prosecution under 42 U.S.C.A. §1983 (the only two claims at issue in this case), "a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." Grubbs v. Univ. of Delaware Police Dep't, 174 F. Supp. 3d 839, 851 (D. Del. 2016). The court should consider incident reports related to an arrest when a plaintiff challenges the arrest as unlawful, as "either referenced in [Plaintiffs'] complaint, were matters of public record, and/or were

2

integral to the false arrest claim." <u>Shelley v. Wilson</u>, 339 Fed. Appx. 136, 137 (3d Cir. 2009); <u>Zedonis v. Lynch</u>, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017).

As will be established in the pages that follow, application of the applicable legal standard compels dismissal of Plaintiffs' entire Complaint. Insofar as the City and the ACPD is concerned, the Complaint contains nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" decried in <u>Ashcroft.</u> Plaintiffs' claims of both false arrest and malicious prosecution are predicated solely upon legal conclusions devoid of factual content, while the meager facts that are cited in the Complaint do not support either cause of action. Because the current motion relies upon the incident reports that accompanied the Plaintiffs' arrests and the public records setting forth the disposition of the charges, the 12(b)(6) rubric is proper.

II.    ALL OF THE PLAINTIFFS' CLAIMS PREDICATED UPON FALSE ARREST MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO FILE WITHIN THE STATUTE OF LIMITATIONS AND THERE WAS CLEAR PROBABLE CAUSE TO ARREST.

A.    <u>Because Plaintiffs' Complaint was Filed on February 20, 2026, Well Over Two Years After Their Arrests on July 4, 2020, Plaintiffs' Claims for False Arrest Were Filed Beyond the Statute of Limitations.</u>

It is axiomatic that "[i]n actions under 42 U.S.C. §1983, federal courts apply the state's statute of limitations for personal injury." <u>Sameric Corp. of Del., Inc. v. City of Phila.</u>, 142 F.3d 582, 599 (3d Cir. 1998); <u>Dique v. N.J. State Police</u>, 603

F.3d 181, 185 (3d Cir. 2010)("…state law provides the statute of limitations applicable to a section 1983 claim.") Because the State of New Jersey has a two-year statute of limitations for personal injury, "a section 1983 claim arising in New Jersey has a two-year statute of limitations." Dique, 603 F.3d at 185.

With regard to accrual, by contrast, the Supreme Court has ruled that "the accrual date of a §1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). The limitations period for a §1983 action begins to run from the time "the plaintiff knew or should have known of the injury upon which [his] action is based." Sameric, 142 F.3d at 599. A cause of action accrues "upon awareness of injury, not upon awareness of a potential legal theory or cause of action" and thus "[i]gnorance of the law is not a basis for tolling the statute of limitations." Giles v. City of Phila., 542 F. App'x 121, 123 (3d Cir. 2013).

The Supreme Court has similarly ruled that "the statute of limitations upon a §1983 claim seeking damages for a false arrest … begins to run at the time the claimant becomes detained pursuant to legal process." Wallace, 549 U.S. at 397. One of the primary distinctions between false arrest and malicious prosecution is that the former "covers damages only for the time of detention until the issuance of process or arraignment, and not more." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). The two-year statute for §1983 false arrest claim thereby

4

begins to run on the date of arrest and detention. Id.; Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989)("… a section 1983 claim for false arrest accrues on the date of the arrest, as does a section 1983 claim for abuse of process.") The date that the individual is *released* from detention is not dispositive; rather, the date upon which the alleged unlawful detention *commences* controls that statute as that is "when the wrongful act or omission results in damages." Id. at 391; Hooper v. Guthrie, 390 F. Supp. 1327, 1331 (W.D. Pa. 1975)(statute of limitation for false arrest "began to run on … the day plaintiff was arrested and then incarcerated").

The present case does not involve a felony arrest, which is then followed by an arraignment. Plaintiffs were arrested, detained, processed and then released on summonses on the same day – July 4, 2020. (Exhibit C, p. 29). Plaintiffs' claims accrued on that date, compelling the false arrest claims to be filed by July 4, 2022. Plaintiffs' failure to comply with the two-year statute compels dismissal of Plaintiffs" "first" through "fifth cause of action," as they are all predicated upon the suppose false arrest, allegedly ordered by Mayor Small. (Exhibit A, ¶¶16-20).

B.    Plaintiffs Will Be Unable to Establish a Lack of Probable Cause Given the Undisputed Facts, Compelling Dismissal of Both the Claims for False Arrest and Malicious Prosecution.

Because claims for false arrest are "grounded in the Fourth Amendment protection against unreasonable seizures …. a plaintiff must allege facts showing that he was arrested without probable cause" to survive a 12(b)(6) motion to

dismiss. Tucker v. City of Phila., 679 F. Supp. 3d 127, 137 (D.N.J. 2023). The Third Circuit Court of Appeals has deemed the existence of probable cause a "threshold issue" whereby the "proper inquiry …is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). The search for probable cause thereby involves "an objective inquiry — 'an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.'" Adams v. Selhorst, 779 F. Supp. 2d 378, 386 (D. Del. 2011)(quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)).

Our Circuit has also described probable cause to arrest as the presence of facts that engender "more than mere suspicion," yet less than "sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). It objectively exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id. In Dowling, for example, plaintiff was arrested and charged with defiant trespass and criminal conspiracy for protesting outside of an abortion clinic, which resulted in the Municipal Court sustaining a demurrer to the criminal charges. To avoid summary judgment on her "section 1983 claim based

6

on false arrest or misuse of the criminal process … [i]t was incumbent upon Dowling to produce evidence to support her allegation, on which she bore the burden of proof, that her arrest was not premised upon the officers' reasonable belief that she had violated the law." Id. at 141-42. Whether plaintiff actually committed the offense of defiant trespass was not the focus; "the relevant issue is whether the officers who arrested Dowling had a reasonable belief that she had violated the defiant trespass and criminal conspiracy laws." Id. at 142 fn6.

Third Circuit law further holds that "the First Amendment is not an absolute shield against a disorderly conduct charge." Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 204 (3d Cir. 2008). Even in a situation where a plaintiff is able establish a violation of his First Amendment rights, a "choice to disobey police orders is not," compelling dismissal of **all** Fourth Amendment claims if there is probable cause to charge the plaintiff with any individual claim. It is axiomatic that, in our Circuit "the establishment of probable cause as to any one charge [of several charges] is sufficient to defeat" all "'Fourth Amendment claims,' including claims for malicious prosecution." Minatee v. Philadelphia Police Dep't, 502 Fed. Appx. 225, 227 (3d Cir. 2012)(quoting Id. at fn14).

In the present case, each Plaintiff was charged with the same two violations: Obstructing Highways/Passes and Refusal to Obey Official Requests, contrary to 2C:33-7. (See Exhibit C, Police Incident Reports). 2C:33-7 is a petty disorderly

persons offense, which requires proof that the individual "having no legal privilege to do so, purposely or recklessly obstructs any highway or other public passage," where the term "'[o]bstructs' means renders impassable without unreasonable inconvenience or hazard." State v. Wishnatsky, 258 N.J. Super. 67, 82 (Law. Div. 1990); State v. Williams, 467 N.J. Super. 1, 5 (App. Div. 2021)("We agree with certain Law Division holdings requiring an actual blockage as a necessary element of that offense.") The assertion of an individual's right to engage in protest under the First Amendment is simply not the "legal privilege" contemplated in the statute if the effect of the protest is obstruction of passage. Id.

The "legislative policy and purpose of the statute" as found in the legislative history makes clear that obstruction, without obtaining a prior permit to engage in such conduct, is the linchpin. The commentary to the statute states that the "purpose of this section is to prevent public inconvenience from unjustified obstruction of passage, while making it clear that mere assembly on sidewalks does not constitute an offense or subject the assemblers to police orders to move on or disperse." Provided that "passersby may with reasonable safety and convenience get through or past the crowd, picketing, speechmaking or idling in groups will not be criminal." Wishnatsky, 258 N.J. Super at 82. The New Jersey courts have found, "consonant with the underlying legislative policy and purpose of the statute, the 'legal privilege' mentioned in the statute refers to prior authorization to conduct

8

First Amendment speech or assembly exercises which may result in the obstruction of public passages." Id. at 83. In short, obstructing a highway without prior permission is "not protected by the First Amendment." Id. at 84.

With regard to violations of 2C:33-7(b), the New Jersey Courts have stated that a person violates the statute "if he or she 'refuses to obey a reasonable official request or order to move: (1) To prevent obstruction of a highway or other public passage; or (2) To maintain public safety by dispersing those gathered in dangerous proximity to a fire or other hazard.'" State v. Bessey, A-0554-13T2, 2014 WL 9928205, at *5 (N.J. Super. Ct. App. Div. June 23, 2015). Whereas a violation of subsection (a) requires purposeful or reckless conduct, a violation of subsection (b) only requires proof that the individual "willfully and knowingly defie[d] the reasonable command of a law enforcement officer." Id. at 8.

In the present case, the ultimate disposition of the municipal court charges is irrelevant, as the focus of the inquiry is whether the individual officers at the scene had probable cause to believe plaintiffs violated 2C:33-7. Based on the undisputed facts, the defendants had probable cause to arrest, while the Plaintiffs have failed to even allege that they had the legal privilege to protest. Plaintiffs have alleged in their Complaint that prior to the event Plaintiff Young "reached out to the United States Department of Justice for intervention" and that "[l]iaisons were assigned by the Department of Justice as observers" who were in contact with various Atlantic

City and State officials. (Exhibit A, ¶6) Conspicuously absent from the Complaint was any allegation that Plaintiffs had obtained a "special event" permit from the Atlantic City Office of Special Events; any permit from the State of New Jersey; nor a permit from Atlantic County before blocking the roadways.

The Plaintiffs' failure to allege that they had obtained a permit prior to engaging in the march establishes the lack of "legal privilege" contemplated in the municipal statute. As the ACPD made clear, it had no prior knowledge of the specific route that the march would take, confirming the lack of a permit. The officers on the scene "were forced to divert and block traffic on the fly to prevent major traffic disruptions and/or accidents." (Exhibit C, p. 27). The incident reports further establish (as reported by multiple officers on the scene) that Plaintiffs purposely and/or recklessly blocked an Atlantic City Expressway lane, blocked an entranceway, and blocked access to the highway, all of which created significant safety concerns. (Exhibit C, pp. 12, 13, 15, 16, 17, 18 and 27-28). These undisputed facts establish the existence of probable cause to arrest, given the observations of the Officers on the scene.

Even if there were some dispute with regard to whether the Plaintiffs had a First Amendment right to protest, it is beyond dispute that they did not have a First Amendment right, or any right for that matter, to disregard the ACPD's order to disperse after they had blocked the highway. The ACPD allowed the march to

10

continue throughout the City, yet delivered an order to disperse once the crowd had stopped in the middle of an active roadway. The ACPD delivered two clear and unmistakable warnings that specifically identified the municipal statute that the Plaintiffs were violating. It is undisputed that Plaintiffs are the ones who willingly and knowingly refused to obey the reasonable official request, while some them actively impeded the arrests. (Exhibit C, pp. 12, 13, 15, 16, 17, 18 and 27-28). In fact, one of the Plaintiffs, Michael Scott, was found guilty of violating 2C:33-7(b), presumptively establishing probable cause for all alleged Fourth Amendment violations pursuant to Startzell and Minatee. (Exhibit D). Yet even without the Municipal Court's finding of guilt, the allegations of the Complaint coupled with the undisputed observations listed in the incident reports establish probable cause to arrest all seven Plaintiffs for a violation of both 2C:33-7(a) and (b).

III.    PLAINTIFFS' CLAIMS FOR MALICIOUS PROSECUTION MUST BE DISMISSED, AS THE ALLEGATIONS OF THE COMPLAINT (AND THE OFFICIAL RECORDS INTEGRAL TO THE COMPLAINT) DO NOT SUPPORT ANY OF THE REQUIRED ELEMENTS.

In order to establish a prima facie case of malicious prosecution under §1983, Plaintiff must establish the following elements:

> (1) the defendant initiated a criminal proceeding;
> (2) the criminal proceeding ended in his favor;
> (3) the defendant initiated the proceeding without probable cause;
> (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>Allen v. N.J. State Police</u>, 974 F.3d 497, 502 (3d Cir. 2020)(quoting <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007)). New Jersey State Courts distinguish "between the elements of a malicious prosecution claim depending on" the nature of the underlying charges. <u>Klesh v. Coddington</u>, 295 N.J. Super. 51, 58 (Law. Div. 1996), <u>aff'd and remanded,</u> 295 N.J. Super. 1 (App. Div. 1996). When the underlying charge is a municipal offense (such as N.J.S.A. 2C:33–7) the New Jersey Courts also require proof of a "special grievance," which "consists of an interference with one's liberty or property and includes events such as the filing of a bankruptcy petition, granting an injunction, filing a lis pendens or wrongful interference with the possession or enjoyment of property." <u>Id.</u> at 63.

Federal Courts have made clear that a claim for malicious prosecution implicates Fourth Amendment, and not Fourteenth Amendment, rights. In <u>Albright v. Oliver</u>, 510 U.S. 266, 271(1994), the Supreme Court held that "it is the Fourth Amendment, and not substantive due process, under which" the malicious prosecution "claim must be judged." The Court thereby expressed a reluctance to expand the principles of substantive due process, and found that the right to be free from prosecution without probable causes exists under the Fourth Amendment, which has "relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." <u>Id.</u> at 274.

12

In the present case, Plaintiffs will be unable to establish any of the elements of malicious prosecution, other than the fact that the Defendants initiated a criminal proceeding. Although the bulk of the charges may have been dismissed, the dismissals are not consistent with a finding of actual innocence, especially in light of the fact that Plaintiff Scott was found guilty of one of the charges. The Officers had probable cause to issue the municipal court citations. There is no proof whatsoever that the Officers on the scene acted maliciously, as they were enforcing the law. And it is undisputed that the Plaintiffs did not suffer either a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, nor a "special grievance" under the New Jersey formulation.

    A.    <u>The Ultimate Disposition of the Municipal Charges Are Not in Plaintiffs' "Favor," as Required to Support Malicious Prosecution, Because They Were Not Consistent With Actual Innocence.</u>

Courts within the Third Circuit have repeatedly found that the second element (favorable termination) "is only satisfied if the criminal case was disposed of in a way that indicates the innocence of the accused." <u>Allen</u>, 974 F.3d at 502 (quoting <u>Kossler v. Crisanti</u>, 564 F.3d 181, 187 (3d Cir. 2009)); Restatement (Second) of Torts § 660, comment "a" (2001)("[p]roceedings are 'terminated in favor of the accused,' as that phrase is used . . . throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused.").

> [I]f the circumstances show that unreliable evidence has been suppressed and the prosecution then abandons the case because of

13

> lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence. But if the evidence was only suppressed on "technical" grounds having no or little relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence.

Allen, 974 F.3d at 503. In other words, a prosecutor's intentional and formal abandonment of criminal proceedings does not by itself establish a favorable termination; it is sufficient *"only when their final disposition is such as to indicate the innocence of the accused."* Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)(citing Restatement (Second) of Torts §660, cmt. a (1976)).

The Court must therefore determine why the criminal case was dismissed to ascertain whether the dismissal is consonant with innocence. Id. at 503-04. Even if a plaintiff is able to establish malice and a lack of probable cause "it is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged." Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000) (quoting Prosser and Keeton on the Law of Torts 885 (5th ed. 1984)). A plaintiff may be barred from asserting a malicious prosecution claim "even when the plaintiff was acquitted in the prior criminal proceedings, for a verdict of not guilty only establishes that there was not proof beyond a reasonable doubt." Id.

In the present case, the only Municipal Court records publicly available with regard to the charges common to all Plaintiffs (violations of 2C:33-7(a) and (b))

establish that Michael Scott was found guilty of failing to obey the ACPD's legal order to disperse, clearly barring him from asserting a claim for malicious prosecution. (Exhibit D). Yet this should also apply to all of the other Plaintiffs as well because both the Complaint and the Incident Reports establish that all of the Plaintiffs engaged in the exact same conduct. Although the formal dispositions are unavailable, Scott's guilty finding establishes that the dismissal of the claims against the other Plaintiffs (at least with regard to the subsection b charge) was not consonant with their innocence. If Scott was found guilty, and the Plaintiffs were engaging in identical conduct, it is reasonable to assume that the dismissals must have resulted from some technical violation or some other reason to abandon the matter, unconnected to the Plaintiffs' actual innocence.

    B.    <u>Plaintiffs Have Failed to Even Allege that the Defendants Acted Maliciously, While the Existence of Probable Cause Set Forth Above Conclusively Establishes a Lack of Malice.</u>

The definition of "[a]ctual malice in the context of malicious prosecution" is "either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." <u>Morales v. Busbee</u>, 972 F. Supp. 254, 261 (D.N.J. 1997); Restatement of Torts § 668, Comment d (1977) (defining malice as initiation of criminal proceedings for an improper purpose, which is further defined as when (1) the accuser does not believe in the guilt of the accused; (2) the proceedings are initiated primarily

because of hostility or ill will toward the accused; or (3) the proceedings are initiated for the purpose of obtaining a private advantage). Claims of malicious prosecution "are most commonly associated with prosecutors," though "police officers who … conceal[] or misrepresent[] material facts to district attorneys may also be liable." Ogrod v. City of Philadelphia, 598 F. Supp. 3d 253, 263 (E.D. Pa. 2022)(citing Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014)).

   In the present case, the existence of probable cause set forth above in connection with the false arrest claims applies with equal force to the claims of malicious prosecution. Yet even if there was some distinction in the analysis of probable cause, the allegations of the Complaint (coupled with the Incident Report and the Municipal Court disposition) establish the lack of malice. Each of the officers on the scene reported the same exact quantum of facts establishing Plaintiffs' abject and intentional violations of 2C:33-7. The undisputed facts do not even hint at ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose. There is nothing in the Complaint itself (nor would discovery be capable of producing facts) to establish that the Officers either did not believe in the guilt of the accused, issued the citations primarily because of hostility or ill will toward the accused rather than their objective observations on the scene, or otherwise issued the citations for the purpose of obtaining a private advantage.

16

    C.    <u>Because Defendants Were Arrested Without a Warrant and Released, They May Not Assert a §1983 Malicious Prosecution Claim, As They Did Not Suffer Deprivation of Liberty Consistent With a Seizure.</u>

When an officer effectuates an arrest without a warrant, the facts do not implicate malicious prosecution, "[a]bsent any constitutionally significant pretrial restraints on plaintiff's liberty." <u>Russoli v. Salisbury Twp.</u>, 126 F. Supp. 2d 821, 853 (E.D. Pa. 2000). As one district court summarized:

> Because [plaintiff] alleges that his arrest was not made pursuant to a warrant, it cannot serve as the basis for his malicious prosecution claim. *See Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001) ("Appellants were arrested without a warrant and, thus, their arrests-which antedated any legal process-cannot be part of the Fourth Amendment seizure upon which they base their section 1983 [malicious prosecution] claims."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d. Cir1995) (plaintiff's arrest could not "serve as the predicate deprivation of liberty [for a §1983 malicious prosecution claim] because it occurred prior to his arraignment and without a warrant"); *Mateiuc v. Hutchinson*, 1998 WL 240331 at *3 (E.D.Pa. May 14, 1998) (while a wrongful warrantless arrest may give rise to a claim for false arrest, it cannot serve as the basis for a § 1983 malicious prosecution claim); *see Fernandez v. Stack*, No. 03–4846(JAP), 2006 WL 777033 (D.N.J. Mar. 27, 2006).

<u>Dickens v. Dover City Police Dep't</u>, CIVA 03-310 JJF, 2007 WL 1970802, at *8 (D. Del. June 29, 2007); <u>Morales</u>, 972 F. Supp. at 266 (quoting W. Keeton et al., Prosser and Keeton on Law of Torts 885-86 (5th ed.1984)("If there is no process issued at all and the plaintiff is arrested without a warrant or any other valid basis for an arrest, there is no malicious prosecution but a false arrest.")

Similarly, courts within the Third Circuit have maintained that "being charged and prosecuted for Disorderly Conduct … is not a cognizable violation of Fourth Amendment rights." Russoli, 126 F. Supp. 2d at 854 (citing Johnson v. City of Chester, 10 F.Supp.2d 482 (E.D. Pa. 1998)). Although malicious prosecution requires a seizure, "not all Fourth Amendment 'seizures' can serve as the basis for a malicious prosecution claim." Mantz v. Chain, 239 F. Supp. 2d 486, 501 (D.N.J. 2002). The prohibited seizure must reflect "perversion of proper legal procedures" and must have occurred "as a consequence of a legal proceeding." Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998), as amended (Dec. 7, 1998).

Gallo presents the type of seizure that *may* warrant a finding of malicious prosecution, as he "was arrested and subjected to significant pretrial restrictions." DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005). In a passage that this Court should adopt in the present case, our Circuit ruled:

> [Plaintiffs] were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions. …
>
> Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure. DiBella and McLaughlin failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure.

Id. at 603 (internal citations omitted). If a party is arrested without a warrant, released, and then issued a summons to appear in court – and his appearance was not "secured by means of bail, a warrant, incarceration, or restrictions on his travel," – no malicious prosecution claim will lie. Mantz, 239 F.Supp.2d at 502. In short, "the issuance of a summons requiring a criminal defendant to appear in court on a specific date does not, by itself, amount to a 'seizure' under the Fourth Amendment." Id. at 503; DiBella, 407 F.3d at 603 ("Attending one's trial is not a government 'seizure'" for a "§1983 malicious prosecution action.")

In the present case, Plaintiffs' Complaint fails to allege that Plaintiffs "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding" because it simply never occurred. As in DiBella, Mantz and Russoli, the Plaintiffs in the present case were arrested without a warrant and subsequently issued a summons to appear in municipal court. The incident report makes clear that The Plaintiffs were placed into custody, processed at the Public Safety Building, and then were all "released on summonses." (Exhibit C, p. 28). There were no other restraints – other than to appear at trial – which our courts have repeatedly deemed insufficient to satisfy the fifth element of Plaintiffs' malicious prosecution cause of action. Utilizing the New Jersey framework similarly reveals the lack of any "special grievance," which is necessary when the underlying charge involves a municipal offense.

19

IV.    BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH INDIVIDUAL
LIABILITY, ALL OF HIS CAUSES OF ACTION THAT ASSERT A
MONELL OR SUPERVISORY CLAIM MUST BE DISMISSED.

The present case involves individual claims against various unidentified

officers alleging false arrest and malicious prosecution, as well as claims against

the City of Atlantic City, Mayor Small & Former Chief White. In order to maintain

a claim, a plaintiff must first establish the individual liability of the officers

involved on the scene of the alleged constitutional deprivation:

> [N]either Monell v. New York City Dept. of Social Services, 436 U.S.
> 658 (1978), nor any other of our cases authorizes the award of
> damages against a municipal corporation based on the actions of one
> of its officers when in fact the jury has concluded that the officer
> inflicted no constitutional harm. If a person has suffered no
> constitutional injury at the hands of the individual police officer, the
> fact that the departmental regulations might have authorized the use of
> constitutionally excessive force is quite beside the point.

City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). The Third Circuit holds,

"If no officer committed a 'violation in the first place, there can be no derivative

municipal claim.'" Smith v. Gransden, 553 Fed. Appx. 173, 178 (3d. Cir. 2014).

To properly state a claim for supervisory liability, in turn, Plaintiff must

directly plead in the Complaint (and in accordance with Bell and Ashcroft provide

some factual basis for the allegation) that Defendant Small had "personal

involvement in the alleged wrongs." Smith v. Sch. Dist., 112 F. Supp. 2d 417, 433

(E.D. Pa. 2000). The mere existence of "a supervisory relationship with someone

who allegedly violated plaintiff's constitutional rights, without more, is

insufficient." <u>Smith</u>, 112 F. Supp. at 433. A prerequisite is an actual violation of the Plaintiffs' rights, as "any claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates." Finally, a Plaintiff must adequately allege a causal connection between the supervisor's direction and that violation by setting forth sufficient facts that the supervisor "knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

Our courts have further made clear that in the wake of <u>Ashcroft v. Iqbal</u>, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to "demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue." <u>Santiago</u>, 629 F.3d at 130 (quoting <u>Hedges v. Musco</u>, 204 F.3d 109, 121 (3d Cir. 2000)). Naked assertions that a supervisor either participated, directed, or had knowledge of and acquiesced in the alleged constitutional violations is insufficient to state a claim, and are properly deemed "mere restatements of the elements of [the] supervisory liability claims," which "are not entitled to the assumption of truth." <u>Id</u>. at 132. Yet even this proper pleading would only be the first step in the analysis; the Court would still have to determine "whether those allegations make

it plausible that [the supervisory defendants] directed the constitutional violation or had knowledge and acquiesced in the action." Id. at 133.

Based on the fact that Plaintiffs will be unable to assert a claim for false arrest or malicious prosecution against any individual, the claims against the City of Atlantic City.    Moreover, because there are no factual allegations, but only conclusions, asserted as to Mayor Small's involvement in the decision to arrest Plaintiffs (and the Complaint is devoid of even conclusory arguments as to Defendant White) Plaintiffs have failed to satisfy the 12(b)(6) standard for alleging municipal or supervisory liability.

V.    DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE COMPLAINT PURSUANT TO THE QUALIFIED IMMUNITY DOCTRINE.

The Third Circuit has described qualified immunity as "an 'entitlement not to stand trial or face the other burdens of litigation,'" which is "'conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.'" Walter v. Pike Cty., 544 F.3d 182, 190 (3d Cir. 2008)(quoting Mitchell v. Forsyth, 472 U.S. 511, 525 (1985)). The doctrine has been often described in the Third Circuit in the following terms:

> Qualified immunity, as the Supreme Court has explained, is the
> principle that "government officials performing discretionary
> functions generally are shielded from liability for civil damages
> insofar as their conduct does not violate clearly established statutory
> or constitutional rights of which a reasonable person would have
> known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73
> L. Ed. 2d 396 (1982). To determine whether this type of immunity

22

applies, we engage in a multi-step inquiry. "First, we must ask whether the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law. If so, then we go on to ask whether the unlawfulness of the action would have been apparent to an objectively reasonable official." *Showers v. Spangler*, 182 F.3d 165, 171-172 (3d Cir. 1999) (internal citation omitted); see also *Rouse v. Plantier*, 182 F.3d 192, 196-197 (3d Cir. 1999) (three-step inquiry) ("(1) whether the plaintiffs alleged a violation of their constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiffs' rights").

Walter, 544 F.3d at 191; Estate of Soberal v. City of Jersey City, 334 F. App'x 492, 494 (3d Cir. 2009)(the first step in the qualified-immunity analysis is to determine "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right.")

The qualified immunity doctrine "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); Hunter v. Bryant, 502 U.S. 224, 229 (1991).

With regard to the overall reasonableness issue, "[t]he evaluation of objective reasonableness is based upon the information possessed by the officer at the time of the illegal conduct." <u>Adams</u>, 779 F. Supp. 2d at 389.

> By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. ... where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 819 (1982)(quoting <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967)). Discretionary functions, in turn, are "those in which the surrounding judgments 'almost inevitably are influenced by the decisionmaker's experiences, values, and emotions.'" <u>Beckett v. Department of Corrections</u>, 981 F. Supp. 319, 329 (D. Del. 1997)(quoting <u>Id.</u> at 816)).

With specific relevance to the present case, the Third Circuit has ruled that "there is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established" as of July 4, 2020. <u>Orsatti</u>, 71 F.3d at 483. With equal applicability to the current matter, the Court held:

> Finding that the right at issue was clearly established, however, does not end the court's inquiry. Nor does the court's decision turn merely on whether the official violated that clearly established right. On the contrary, the Supreme Court has recognized that it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present. The Court has made clear that in such cases those officers, like other officials

who act in ways they reasonably believe to be lawful, will not be held personally liable.

Id.; Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)("The second step is the

immunity analysis and addresses whether, if there was a wrong, … the officer

made a reasonable mistake about the legal constraints on his actions and should

therefore be protected against suit.")

In the present case, the qualified immunity analysis need not proceed beyond

the first step because, as set forth above, Plaintiff has not set forth sufficient facts

to make out a violation of a constitutional right. There are no facts alleged to

establish that the Officers were plainly incompetent or knowingly violated the law;

rather the facts establish that the Officers acted reasonably, based on their

observations and orders received from superiors at the scene. Yet even if Plaintiffs

could surmount all of these obstacles, any potential "mistake" in issuing the

municipal court citations was inherently reasonable. The information possessed by

the officers at the time of the allegedly illegal conduct fully supported their actions

and their exercise of discretion.

## CONCLUSION

For the above stated reasons, the Plaintiff's Complaint must be dismissed.

Respectfully submitted,
**LAW OFFICES OF RILEY & RILEY, LLC**

Tracy L. Riley

25